*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 12-CF-1860 and 12-CF-1861

DARIUS YOUNG, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CF2-10858-11 and CF2-22892-11)

(Hon. Ronna L. Beck, Trial Judge)

(Argued January 29, 2015                    Decided March 5, 2015)

*Chris Kemmitt*, Public Defender Service, with whom *James Klein* and *Alice Wang*, Public Defender Service, were on the brief, for appellant.

*Stephen F. Rickard*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Andrew Finkelman*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and THOMPSON, *Associate Judges*, and BELSON, *Senior Judge*.

BELSON, *Senior Judge*: Darius Young appeals his convictions for carjacking, first-degree theft, and unauthorized use of a vehicle, arguing that the trial court abused its discretion by admitting lay witness opinion testimony that

identified him in surveillance footage. We conclude that the testimony was admissible under *Sanders v. United States*, 809 A.2d 584, 596 (D.C. 2002), and affirm.

## I.

On April 9, 2011, at around 12:30 p.m., Mr. Dongni Pho was standing outside of his Lexus SUV in a service station as he finished pumping gas. A man ran up to the SUV, jumped in, locked the door, and drove away. Mr. Pho had left his wallet, keys, and an iPhone inside the car. Police reviewed the station's surveillance footage of the incident, and then used tracking software on Mr. Pho's iPhone to track the device to an area close to the intersection of 46th and G Streets, Southeast. The police arrived at that location around 3:30 p.m., three hours after the robbery. They saw two men standing by automobiles, but the Lexus SUV was nowhere to be seen. Officer White saw one man, later identified as appellant Darius Young, wearing a jacket that looked like the jacket worn by the thief in the surveillance video. Mr. Young "made a motion as [though] he was passing something to the other gentleman" which the police interpreted as passing the

stolen iPhone. The other man then walked inside an adjacent apartment building.[1] The police then ordered Mr. Young to approach them, and he did so. He gave the police a series of false names. Officer White then seized Mr. Young's jacket and searched it, but found no proceeds of the theft of the Lexus SUV. Officer White did not arrest Mr. Young, but took his photo without the jacket, which the officers retained. Mr. Young was subsequently prosecuted, and both the photo and the jacket were later introduced at trial.

At trial, the government called a witness, Ms. Edwina Jackson, whose testimony is the subject of this appeal. During the relevant time period, Ms. Jackson was a social worker who worked with at-risk teens, picking them up at their homes or schools and taking them to activities in the community, outside of their own neighborhood. In February of 2009, she worked with two families, including the family of Mr. Young. For four to eight months in 2009, Ms. Jackson worked with Mr. Young and his family for up to five hours a day, Monday through Friday. Her encounters with Mr. Young gradually decreased, especially in late

---

[1] The iPhone tracking software indicated that Mr. Pho's iPhone was in a nearby apartment, but the police could not tell which one, and never recovered the iPhone.

2009 and early 2010. In this period, Ms. Jackson only saw Mr. Young "maybe two or three times a week to not being able to catch up with him at all." Mr. Young had dreadlocks during the period of frequent interaction in 2009, but cut his hair short in 2010. Ms. Jackson testified that her last sighting of Mr. Young was "three to four weeks prior" to June 23, 2011, which would have been after the April 9, 2011, carjacking.

Ms. Jackson testified that she recognized Mr. Young as the carjacker in the gas station surveillance video. She stated that the carjacker's face "does look like Darius," and that "[t]he stance, the gait, and the jacket look[] familiar." Asked to clarify what she meant by gait, she said "[T]he stance. The walk. Like, when he went back and forth, just the posture."

Mr. Young was convicted by the jury of carjacking in violation of D.C. Code § 22-2803 (a) (2001); first-degree theft in violation of D.C. Code §§ 22-3211, -3212 (a) (2001); and unauthorized use of a vehicle, in violation of D.C. Code § 22-3215 (2001). He was sentenced to seven years of incarceration and three years of supervised release on the carjacking charge, and received concurrent sentences on the remaining counts. This appeal followed.

## II.

In *Sanders v. United States*, this court held that the admissibility of "lay witness opinion testimony regarding the identity of a person in a surveillance photograph or a surveillance videotape" is "subject to the sound discretion of the trial court," and we will not disturb the trial court's ruling absent an abuse of that discretion. 809 A.2d at 596; *see also Gee v. United States*, 54 A.3d 1249, 1261 (D.C. 2012). Such testimony is admissible if it is "(a) rationally based on the perception of a witness who is familiar with the defendant's appearance and has had substantial contact with the defendant; and (b) helpful to the factfinder in the determination of a fact in issue." *Sanders*, *supra*, 809 A.2d at 596. At the end of the day, "the trial court at least should be reasonably satisfied that because of the either obscured or altered appearance of the defendant in the photograph or the videotape, or changed appearance of the defendant, the lay witness is more likely to accurately identify the defendant than is the factfinder." *Id.*

Mr. Young argues that "the trial court abused its discretion when it admitted Ms. Jackson's lay opinion testimony identifying Mr. Young as the carjacker in the . . . surveillance video." He states that:

> Ms. Jackson knew no more than the jury did about Mr. Young's jacket, which the government introduced into evidence. And the government failed to establish that Ms. Jackson could identify any distinguishing feature of Mr. Young's gait, or that anyone could discern such a feature from the brief period of nondescript ambulation apparent in the surveillance video. Furthermore, the helpfulness of Ms. Jackson's opinion was undermined by the fact that she had not seen Mr. Young since 2010, was not familiar with his appearance at the time of the carjacking, and made her initial identification in a highly suggestive context. Accordingly, the trial court erred. . . .

Mr. Young's argument is unpersuasive. Just as in *Sanders*, Ms. Jackson was "familiar with the defendant's appearance and has had substantial contact with the defendant," *Sanders*, *supra*, 809 A.2d at 596, because she had extensive contact with Mr. Young in 2009, some contact in 2010, and had seen him as recently as May or June of 2011.[2] *See Vaughn v. United States*, 93 A.3d 1237, 1271 (D.C. 2014) (holding that police officers' identification testimony was admissible under *Sanders* where "officers, over a period of months, had daily interaction with [defendants] . . . interaction which gave rise to familiarity and particular knowledge of their physical features"). Ms. Jackson's testimony was also "helpful

---

[2] Although Mr. Young asserts that Ms. Jackson "had not seen Mr. Young since 2010," Ms. Jackson testified that she most recently saw Mr. Young "three to four weeks prior" to the June 23, 2011 carjacking.

to the factfinder in the determination of a fact in issue." *Sanders*, *supra*, 809 A.2d at 596. As in *Sanders*, the perpetrator's face is obscured, since the footage was not of sufficiently high quality to clearly show the carjacker's face.[3] *Id.* ("the features of the men . . . were obscured by their hats . . . the videotape was 'not all that clear.'"); *see also Vaughn*, *supra*, 93 A.3d at 1245 ("The recordings were of limited utility on their own. . . . [T]he images are highly pixelated and the faces are . . . 'blurry.') (internal citation omitted). Accordingly, Ms. Jackson's ability to identify Mr. Young from his face, "[t]he stance, the gait, and the jacket look[ing] familiar" was helpful to the jury, who would have an inferior ability to recognize Mr. Young based on these attributes. Although Mr. Young argues that Ms. Jackson was unable to describe the carjacker's gait with sufficient specificity, the court in *Sanders* was satisfied by the witnesses' ability to describe identifying characteristics of the defendants with the same level of detail: one witness noting a defendant's "sway . . . and distinctive moustache," and three other witnesses "his jacket and voice." *Sanders*, *supra*, 809 A.2d at 594 (internal quotation marks omitted). The trial court here was, to put it as we did in *Sanders*, "reasonably

---

[3] To the extent that Mr. Young argues that Ms. Jackson relied "only" upon the carjacker's gait and jacket to identify him as Mr. Young, this argument is contradicted by Ms. Jackson's testimony that "[w]hen he turned around, he looked—the face isn't really clear on the video, but it does look like Darius."

satisfied that because of the . . . obscured . . . appearance of the defendant in the . . . videotape . . . the lay witness [was] more likely to accurately identify the defendant than [was] the factfinder." *Id.* at 596. Thus the admission of Ms. Jackson's testimony was not error, and Mr. Young's convictions are accordingly

*Affirmed.*