Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/14/2018 08:09 AM CST

STATE OF NEBRASKA, APPELLEE, V.
COURTNEY J. SAVAGE, APPELLANT.
___ N.W.2d ___

Filed December 14, 2018.    No. S-17-1166.

1. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence, it does not matter whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finders of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Verdicts: Appeal and Error.** Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.

3. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

4. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

5. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

6. **Pleadings: Evidence: Appeal and Error.** A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury, but is not an appealable order. The purpose of a motion in limine is to produce, when appropriate, an advance ruling on anticipated objectionable material, and the denial of the motion cannot, in and of itself, constitute reversible error.

7. **Rules of Evidence: Proof.** A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity.

8. **Rules of Evidence.** Generally, the foundation for the admissibility of text messages has two components: (1) whether the text messages were accurately transcribed and (2) who actually sent the text messages.

9. **Rules of Evidence: Proof.** The proponent of text messages is not required to conclusively prove who authored the messages. The possibility of an alteration or misuse by another generally goes to weight, not admissibility.

10. **Rules of Evidence: Hearsay: Proof.** The State must prove by a greater weight of the evidence that a defendant authored or made a statement in order to establish preliminary admissibility as nonhearsay under Neb. Rev. Stat. § 27-801(4)(b)(i) (Reissue 2016).

11. **Rules of Evidence: Proof.** Under what is commonly and incorrectly referred to as the "best evidence rule," in order to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required.

12. ____: ____. The "original writings rule" applies only if the party offering the evidence is seeking to prove the contents of a writing, recording, or photograph.

13. **Rules of Evidence.** The rule of completeness allows a party to admit the entirety of an act, declaration, conversation, or writing when the other party admits a part and when the entirety is necessary to make it fully understood.

14. ____. The rule of completeness is concerned with the danger of admitting a statement out of context, but when this danger is not present, it is not an abuse of discretion to refuse to require the production of the remainder or, if it cannot be produced, to exclude all the evidence.

15. **Motions to Dismiss: Directed Verdict: Waiver: Appeal and Error.** A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict.

16. **Directed Verdict: Appeal and Error.** When a defendant makes a motion at the close of the State's case in chief and again at the conclusion of all the evidence, it is proper to assign as error that the defendant's motion to dismiss made at the conclusion of all the evidence should have been sustained.

17. **Convictions: Evidence: Appeal and Error.** A conviction will be affirmed in the absence of prejudicial error if the properly admitted

evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.

18. **Convictions: Corroboration: Witnesses: Testimony.** When the law requires corroboration of a witness to support a conviction, a witness' testimony must be accompanied by evidence other than that from the witness.

19. **Convictions: Corroboration: Witnesses: Testimony: Controlled Substances.** Under the Uniform Controlled Substances Act, corroboration is sufficient to satisfy the requirement that a conviction not be based solely upon uncorroborated testimony of an individual cooperating with the prosecution if the witness' testimony is corroborated as to material facts and circumstances which tend to support the testimony as to the principal fact in issue.

20. **Criminal Law: Corroboration: Testimony.** Testimony of a cooperating individual need not be corroborated on every element of a crime.

21. **Convictions: Controlled Substances: Evidence: Proof.** Evidence that a defendant had constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession and to sustain a conviction for unlawful possession.

22. **Controlled Substances: Evidence: Proof.** Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the substance at the time of the arrest or by a showing of dominion over the substance.

23. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Darik J. Von Loh, of Hernandez Frantz, Von Loh, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

FREUDENBERG, J.

## I. NATURE OF CASE

Courtney J. Savage was arrested and charged with possession of a controlled substance with intent to deliver, in violation of Neb. Rev. Stat. § 28-416(2)(a) (Reissue 2016), a Class II felony. He was further alleged to be a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016). During trial, the State produced evidence of text messages from what was purported to be Savage's cell phone, which indicated that Savage was selling the illegal drug methamphetamine. Savage objected to the offer of the text messages on foundation and hearsay grounds, primarily arguing that the identity of the message author was unclear. The district court overruled his objections, and after trial, a jury found Savage guilty. The district court determined that Savage was a habitual criminal and ordered him to serve 10 to 18 years in prison. Savage appeals from his conviction.

## II. BACKGROUND

Savage was arrested and charged with possession of a controlled substance with intent to deliver, in violation of § 28-416. Further, he was alleged to be a habitual criminal pursuant to § 29-2221. Following trial, he was convicted and found to be a habitual criminal. Savage was subsequently sentenced to a term of 10 to 18 years' incarceration. The facts of his arrest and trial leading to his conviction follow.

### 1. FEBRUARY 16 AND 17, 2017, ARREST

During the night of February 16, 2017, and the early morning hours of February 17, Lincoln Police Department officers Anthony Gratz and Andrew Barksdale arrested Michael Dryden for possession of methamphetamine with intent to deliver. After being brought to the police station to be interviewed, Dryden received several text messages from an individual referred to as "Pint" seeking to sell Dryden methamphetamine. Later, through a review of the Lincoln Police Department's records management system, it was learned that "Pint" was a nickname for Savage.

With Dryden's permission, the officers borrowed Dryden's cell phone and continued to communicate with Savage, hoping to find him and arrest him for his potential illegal methamphetamine sale to Dryden. After multiple text messages were exchanged, a meeting to purchase methamphetamine was arranged to occur at an agreed-upon location in Lincoln, Nebraska. When the officers arrived at that location, they parked in a nearby alleyway, began surveillance, and continued the text conversation.

The officers received a message from Savage's cell phone indicating that he was at the agreed-upon location. Seeing no one arrive, the officers drove around the block. The officers then saw a blue two-door Toyota. The police cruiser and the Toyota were the only vehicles in the area. Almost immediately after the police saw the Toyota drive by, Dryden's cell phone received a text message stating: "Police [are] outside."

The officers concluded that Savage was in the passing Toyota. The officers followed the Toyota and observed it fail to properly signal a turn. The officers initiated a traffic stop of the Toyota.

During the stop, one of the officers approached the driver's side of the Toyota while the other officer approached the passenger's side. Gratz made contact with the driver, Johnathon Addleman, and asked for his license and registration. When Addleman failed to produce the requested documentation, Gratz asked him to exit the Toyota. Savage was sitting in the passenger seat of the Toyota and appeared to be using his cell phone. Another passenger, Christine Tannehill, was in the back seat.

While Gratz was questioning Addleman, Barksdale attempted to make contact with Savage in the passenger seat. However, Savage would not acknowledge Barksdale and maintained eye contact with his cell phone. After some time, Savage opened the door to speak with Barksdale. At that point, Barksdale observed that Savage's zipper was undone and a part of his pants was pulled through the zipper opening.

Addleman later explained to Gratz that as the officers were pulling the Toyota over, Savage was "wrestling around in the groin area of . . . his pants" and threw a bag at Tannehill, instructing her to "put it in [her] pussy." Tannehill was questioned by the officers, at which time she admitted to having methamphetamine on her person and turned it over to the officers. At trial, several of the State's witnesses, including Gratz and Barksdale, testified that it was common for individuals possessing drugs to hide them in or near their genitalia.

Within the surrendered bag, there were three smaller individual bags, each of which pretested positive for amphetamine. Later, a laboratory test confirmed that the substance was methamphetamine. The three bags, collectively, contained in excess of 7.6 grams of the substance. In addition to the bags of methamphetamine, an officer collected each person's cell phone. Later, the cell phones were analyzed and data was extracted for investigative purposes.

## 2. Motion in Limine

Prior to trial, Savage filed a motion in limine to exclude evidence of various text messages contained on Savage's and Dryden's cell phones. Savage argued that the State would be unable to authenticate the text messages because, although the messages were being sent from Savage's cell phone, there was no way to prove that Savage was the one texting Dryden at the relevant time. Savage further argued that the text messages would be hearsay and overly prejudicial. The State responded that it could produce the foundation for admission of the text messages into evidence by (1) proving that the cell phone in question was Savage's, (2) proving that the cell phone was in Savage's possession at the time of his arrest, and (3) presenting witness testimony that Savage was sending the messages at issue. The district court overruled Savage's motion in limine.

## 3. Trial

At trial, the State had several witnesses testify as to the events of February 16 and 17, 2017, including Gratz, Barksdale,

Dryden, Addleman, and Tannehill. Gratz and Barksdale specifically testified that a typical "personal use amount" of methamphetamine was about 0.2 grams, thereby indicating that the amount in this case was a "dealer quantity."

### (a) Exhibit 6

During Gratz' testimony, the State offered exhibit 6, photographs of the text conversation between the officers and Savage's cell phone, into evidence. Savage objected to this on foundation and hearsay grounds, asserting that the State did not prove that Savage authored those text messages. The State claimed that it had met its burden regarding foundation and authentication, insofar as Gratz testified that he saw Savage using Savage's cell phone at the time of the arrest. The district court overruled Savage's objection.

### (b) Exhibits 8 and 23

The State also offered into evidence exhibits 8 and 23, portions of extractions from Savage's and Dryden's cell phones containing text messages and cell phone logs from the relevant time period. A police officer testified that he extracted and analyzed the data from Savage's cell phone using a program called Cellbrite. The officer stated that he found that Savage's cell phone's wireless network tethering service, or access point, had "Savage 11" as the password associated with it. Another police officer testified that he extracted and analyzed the data from Dryden's cell phone also using the Cellbrite program.

Savage objected to both exhibits 8 and 23 on hearsay, foundation, best evidence, and completeness grounds. Savage elaborated that exhibit 23 was inadmissible because (1) the State did not prove that Savage authored the relevant messages and (2) it was only a portion of the Cellbrite report. The district court overruled the objections.

### (c) Dryden

Both Dryden and Addleman testified in the State's case in chief pursuant to cooperation agreements. Dryden testified

that as a dealer of methamphetamine, he purchased that drug from Savage, whom he knew only by the name "Pint," on a few occasions. However, Dryden stated that he communicated with Savage only through a family member of Savage's and never spoke to Savage on the cell phone directly. In fact, Savage was not listed as a contact in Dryden's cell phone. Dryden also testified that Tannehill was always present during these sales and that she appeared to be "overseeing" the operation.

### (d) Addleman

Addleman testified that he met Savage and Tannehill at a house in Lincoln and agreed to give them a ride to another location where they were allegedly going to drop off a large amount of methamphetamine. Addleman stated that Tannehill was giving directions to the address while appearing to use Savage's cell phone.

Addleman asserted that after the arrest, Savage devised a plan to implicate Tannehill. Addleman agreed with Savage's request that he sign a notarized statement implicating Tannehill. In his testimony, he claimed that Savage had him rewrite the statement approximately four times. Addleman asserted that he agreed to write the statement only because he wanted to avoid being labeled a "snitch" while at the jail. After he was released from jail, Addleman immediately contacted the public defender's office and the police department to advise them of Savage's plan and the falsity of his notarized statement.

### (e) Christina Krueger

Savage called Christina Krueger to testify on his behalf. Krueger was employed with the Lancaster County jail as a correctional officer. She testified that in the course of her employment, she regularly watched the inmates and often interacted with them. She stated that during Savage and Addleman's time in jail, she became familiar with Savage and Addleman and had interacted with them. Krueger testified that she was aware of Savage and Addleman's interaction regarding Addleman's

notarized letter. She testified that, though she did not actually see the contents of the letter, Addleman did not seem under duress; nor did she notice any strange behaviors. Krueger testified that Addleman stated that he was signing freely and voluntarily before the notary. She noted the existence of certain procedures for inmates to request "protective custody" if they are being harassed by another inmate. On cross-examination, Krueger testified that Savage was the one who initiated the notarization process.

### (f) Tannehill

Tannehill stated that her primary reason for testifying was because she was subpoenaed and wanted to ensure that Savage was held accountable for his actions on the night of February 16, 2017. She did not testify pursuant to a cooperation agreement, as she had already pled guilty to her charges. Tannehill stated that she was a user of methamphetamine and that she had previously purchased that drug from Savage, whom she knew only by the name "Pint" until the night of their arrest.

Tannehill further testified that Savage came over to her house on the evening of February 16, 2017, and asked her to drive him to Lincoln. She agreed, and the pair eventually arrived at a Lincoln house where there were several people, including Addleman. Tannehill admitted to smoking methamphetamine given to her by Savage and observing Savage weighing the drug while at the house.

Tannehill testified that Addleman later agreed to give Savage and Tannehill a ride to a subsequent location, where the pair were allegedly going to drop off "quite a big amount" of methamphetamine. Tannehill testified that while in the car, Savage gave her his cell phone to check the address of the location. She testified that she did not send or receive any text messages while on his cell phone, but simply utilized a map application thereon. Shortly after the police began following Addleman's Toyota, Savage took the drugs out of his pants and instructed Tannehill to put them in her vagina.

## 4. Verdict

At the close of the State's evidence, Savage moved for the court to dismiss the case, alleging that the State had not met its burden of proof beyond a reasonable doubt. The district court overruled his motion. Savage renewed the motion for a directed verdict at the close of all the evidence, which motion the district court again denied. After deliberations, the jury found Savage guilty and the district court accepted the jury's verdict.

## 5. Posttrial and Sentencing

The court held an enhancement hearing where Savage was determined to be a habitual criminal under § 29-2221. Subsequently, at the sentencing hearing, the district court sentenced Savage to a term of not less than a mandatory minimum of 10 years' and not more than 18 years' imprisonment.

## III. ASSIGNMENTS OF ERROR

Savage assigns, rephrased and renumbered, that the district court erred in (1) overruling Savage's motion in limine; (2) overruling Savage's motion to dismiss at the close of the State's case; (3) allowing the case to go to a jury without sufficient evidence to support a verdict; (4) allowing evidence of text messages from Savage's and Dryden's cell phones over hearsay, foundation, completeness, and best evidence objections; and (5) abusing its discretion by imposing an excessive sentence.

## IV. STANDARD OF REVIEW

[1,2] When reviewing a criminal conviction for sufficiency of the evidence, it does not matter whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: We do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finders of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a rea-
sonable doubt.[1] Only where evidence lacks sufficient proba-
tive force as a matter of law may an appellate court set aside
a guilty verdict as unsupported by evidence beyond a reason-
able doubt.[2]

[3,4] In proceedings where the Nebraska Evidence Rules
apply, the admissibility of evidence is controlled by the
Nebraska Evidence Rules and judicial discretion is involved
only when the rules make discretion a factor in determining
admissibility.[3] Where the Nebraska Evidence Rules commit
the evidentiary question at issue to the discretion of the trial
court, an appellate court reviews the admissibility of evidence
for an abuse of discretion.[4]

[5] An appellate court will not disturb a sentence imposed
within the statutory limits absent an abuse of discretion by the
trial court.[5]

## V. ANALYSIS

### 1. Admissibility of Text Messages and Cellbrite Reports

[6] In his first assignment of error, Savage assigns that the
district court erred in overruling his motion in limine to pre-
vent the State from entering into evidence the text messages
and Cellbrite extraction reports. We have held that a motion
in limine is a procedural step to prevent prejudicial evidence
from reaching the jury, but is not an appealable order.[6] The pur-
pose of a motion in limine is to produce, when appropriate, an
advance ruling on anticipated objectionable material, and the

---

[1] *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). See, also, *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

[2] *State v. Dixon, supra* note 1.

[3] *State v. Hill, supra* note 1.

[4] *Id.*

[5] *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[6] See *State v. Tomrdle*, 214 Neb. 580, 335 N.W.2d 279 (1983).

denial of the motion cannot, in and of itself, constitute revers-
ible error.[7] However, because Savage preserved his objections
during trial and assigns the respective rulings thereon as errors
in this appeal, we address the admissibility of the text mes-
sages and Cellbrite extraction reports.

The evidence at issue is found in exhibits 6, 8, and 23.
Exhibit 6 contains photographs of Dryden's cell phone with
the text messages between Savage's cell phone and Dryden's
cell phone on the screen. Exhibits 8 and 23 are portions of the
forensic data extractions of Savage's and Dryden's cell phones
containing the same text messages, as well as other messages
and call logs occurring around the same time.

### (a) Authentication

Savage first contends that the district court erred in allowing
exhibits 6, 8, and 23 into evidence, because the text messages
contained therein were not properly authenticated. A court's
ruling on authentication is reviewed for an abuse of discretion.[8]

[7] Under the Nebraska Rules of Evidence, the requirement
of authentication or identification as a condition precedent
to admissibility is satisfied by evidence sufficient to support
a finding that the matter in question is what its proponent
claims.[9] We have noted that this rule does not impose a high
hurdle for authentication or identification.[10] A proponent of
evidence is not required to conclusively prove the genuineness
of the evidence or to rule out all possibilities inconsistent with
authenticity.[11]

[8] Generally, the foundation for the admissibility of text
messages has two components: (1) whether the text messages

---

[7] See *id.*

[8] *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016); *State v. Draganescu*,
276 Neb. 448, 755 N.W.2d 57 (2008).

[9] Neb. Rev. Stat. § 27-901(1) (Reissue 2016).

[10] *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014).

[11] *Id.*

were accurately transcribed and (2) who actually sent the text messages.[12] Savage does not challenge the first prong of this test, but, rather, argues that the State failed to prove that Savage was the author of the text messages.

[9] The State met its burden for authentication regarding the text messages in exhibits 6, 8, and 23. The State need show only by a greater weight of the evidence that the text messages were authored by Savage—in other words, that the text messages were more likely than not authored by Savage. The proponent of the text messages is not required to conclusively prove who authored the messages.[13] The possibility of an alteration or misuse by another generally goes to weight, not admissibility.[14] Thus, the district court did not abuse its discretion in overruling Savage's foundation and authentication objections to the text messages found within exhibits 6, 8, and 23.

Also respecting the authentication of text messages, Savage argues that the current test, as analyzed above, should be replaced with a test used in a Nevada case, *Rodriguez v. State*.[15] In *Rodriguez*, the Nevada Supreme Court found the following rule to establish the authentication of text messages from cell phones:

> [W]hen there has been an objection to admissibility of a text message, . . . the proponent of the evidence must explain the purpose for which the text message is being offered and provide sufficient direct or circumstantial corroborating evidence of authorship in order to authenticate the text message as a condition precedent to its admission . . . .[16]

Although he claims that the State in the current case would have failed both tests, he asserts that the *Rodriguez* standard

---

[12] *State v. Henry, supra* note 8.

[13] *Id.*

[14] *Id.*

[15] *Rodriguez v. State*, 128 Nev. 155, 273 P.3d 845 (2012).

[16] *Id.* at 162, 273 P.3d at 849.

for the authentication of text messages "firmly attains the tenet established in the rules of evidence."[17] We fail to see how the adoption of the *Rodriguez* test would ease the analysis for the authentication of text messages or provide additional clarity for such purposes in practice. Neither do we see how an application of the *Rodriguez* test would result in a finding that the text messages were not properly authenticated in this case. We find no reason to adopt a new standard for the authentication of text messages.

### (b) Hearsay

Next, Savage contends that the text message evidence in exhibits 6, 8, and 23 is hearsay and that the State failed to prove that the evidence fit within the statement-by-a-party-opponent hearsay exception. Generally, hearsay evidence, as defined by Neb. Rev. Stat. § 27-801 (Reissue 2016), is not admissible unless it fits within an exception to the rule against hearsay.[18] But, pursuant to § 27-801(4)(b)(i), a statement is not hearsay if it is offered against a party and is his own statement.[19] Therefore, whether the text messages were authored by Savage is a threshold matter of admissibility and a preliminary question for the district court.[20] While we earlier determined that the State met its burden of proving that the text messages were authored by Savage by a greater weight of the evidence for the purpose of authentication, at issue is whether the same standard applies for proving whether a statement falls under a hearsay exception. In other words, the question is whether the finding of authenticity under § 27-901 is sufficient to render the text messages admissible as statements by a party opponent.

---

[17] Brief for appellant at 23.

[18] See *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013).

[19] *State v. Reinhart*, 283 Neb. 710, 811 N.W.2d 258 (2012); *State v. Draganescu, supra* note 8.

[20] See Neb. Rev. Stat. § 27-104(1) (Reissue 2016). See, also, *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987).

Although we never specifically addressed the standard of proof for the admissibility of authenticated written statements as statements by a party opponent, hearsay determinations are often treated as preliminary questions under Fed. R. Evid. 104(b), which requires "evidence sufficient to support a finding."[21] Based on our authentication analysis regarding the standard of proof involving Fed. R. Evid. 104, this would implicate a greater weight of the evidence standard. In addition, federal courts, when determining whether statements were properly admitted as statements by a party opponent, have held that the government, as the proponent of the text messages, must show by a greater weight of the evidence that the defendant made the statement.[22] Even further, we, alongside the Court of Appeals, have held that properly authenticated text messages allegedly written by a defendant are nonhearsay as statements by a party opponent, without doing an additional standard of proof analysis for the nonhearsay determination.[23]

[10] We hold that the State must prove by a greater weight of the evidence that a defendant authored or made a statement in order to establish preliminary admissibility as nonhearsay under § 27-801(4)(b)(i). In the instant case, the district court implicitly found that Savage authored the text messages in question. And, based on the above-mentioned evidence regarding authentication, we find that the State's evidence authenticating the text messages satisfied the greater weight of the evidence standard for a preliminary determination on hearsay.

Applying the appropriate standard of review for clear error regarding the factual findings underpinning a trial court's

---

[21] See 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 1:28 (4th ed. 2013). See, also, *U.S. v. Harvey*, 117 F.3d 1044 (1997).

[22] *U.S. v. Benford*, No. CR-14-321-D, 2015 WL 631089 (W.D. Okla. Feb. 12, 2015). See, also, *U.S. v. Brinson*, 772 F.3d 1314 (10th Cir. 2014).

[23] See, e.g., *State v. Henry, supra* note 8; *State v. Wynne*, 24 Neb. App. 377, 887 N.W.2d 515 (2016).

hearsay ruling and de novo regarding the court's ultimate determination to admit evidence over a hearsay objection,[24] we conclude that the district court did not err in overruling Savage's hearsay objections.

### (c) Best Evidence and Completeness

Last, concerning the admissibility of evidence, Savage assigns that the district court erred in overruling his best evidence and completeness objections to exhibits 8 and 23. Savage argues that because exhibits 8 and 23 were only redacted portions of the Cellbrite cell phone data extraction reports, the exhibits did not meet the "best evidence rule as to completeness."[25] The State responds that (1) the exhibits were by definition "original[s]" under Neb. Rev. Stat. § 27-1001 (Reissue 2016) and (2) the reports did not present a danger of admitting a statement out of context, as the redactions sought to include only the relevant information necessary to avoid jury confusion. We agree with the State.

[11,12] Under what is commonly and incorrectly referred to as the "best evidence rule," in order to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required.[26] This "'original writings' rule" applies only if the party offering the evidence is seeking to prove the contents of a writing, recording, or photograph.[27] Under § 27-1001(3), defining an original under the rule, "[i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an original." Here, exhibits 8 and 23 are, by definition, originals. They are printouts of exact data contained on Savage's and Dryden's cell phones. In sum, because exhibits 8

---

[24] *State v. Draganescu, supra* note 8.

[25] Brief for appellant at 33.

[26] Neb. Rev. Stat. § 27-1002 (Reissue 2016); *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001).

[27] *State v. Decker, supra* note 26, 261 Neb. at 389, 622 N.W.2d at 911.

and 23 are "original[s]" under the definition in § 27-1001(3), the district court did not err in overruling Savage's best evidence objections.

[13,14] With regard to the completeness objections, Savage argues that if exhibits 8 and 23 were to be admitted, they should have been admissible only in their complete form, not in a redacted version. This argument lacks merit. The rule of completeness allows a party to admit the entirety of an act, declaration, conversation, or writing when the other party admits a part and when the entirety is necessary to make it fully understood.[28] Under § 27-106(2), a judge in his or her discretion may either require the party thus introducing part of a total communication to introduce at that time such other parts as ought in fairness to be considered contemporaneously with it or permit another party to do so at that time. The rule of completeness is concerned with the danger of admitting a statement out of context, but when this danger is not present, it is not an abuse of discretion to refuse to require the production of the remainder or, if it cannot be produced, to exclude all the evidence.[29]

Savage did not offer into evidence the entirety of the Cellbrite reports. Nor does Savage allege how the remainder of the reports was necessary to make those documents fully understood. He merely alleges that the admission of the redacted portions was prejudicial, without explaining how the redactions created a danger of admitting a statement out of context or elaborating how the entirety of the Cellbrite reports would have alleviated this danger. Based on the record before us, there is nothing to suggest that exhibits 8 and 23, in their redacted form, were misleading or prejudicial. Consequently, the district court did not abuse its discretion when it overruled Savage's rule of completeness objections and declined to require the State to offer the entirety of the Cellbrite reports.

---

[28] *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). See Neb. Rev. Stat. § 27-106 (Reissue 2016).

[29] *State v. Manchester*, 213 Neb. 670, 331 N.W.2d 776 (1983).

## 2. Sufficiency of Evidence

[15] Savage next assigns as error that because the State failed to meet its burden of proof, the district court erred in overruling his motion to dismiss at the close of the State's case. A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict.[30] Because Savage proceeded with trial after his motion to dismiss at the close of the State's case in chief, he waived his claim that the district court erred in overruling his initial motion to dismiss.[31]

[16] But when a defendant makes a motion at the close of the State's case in chief and again at the conclusion of all the evidence, it is proper to assign as error that the defendant's motion to dismiss made at the conclusion of all the evidence should have been sustained.[32] Savage made such a motion at the close of all the evidence. As such, we proceed on Savage's third assignment of error, as it is essentially a sufficiency of the evidence argument.[33]

Savage argues that the evidence was insufficient to support a guilty verdict because there was no corroborating testimony of Savage's guilt as required by Neb. Rev. Stat. § 28-1439.01 (Reissue 2016) and possession thus could not be proved beyond a reasonable doubt. We find no merit in these arguments.

[17] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court, in

---

[30] *State v. Gray*, 239 Neb. 1024, 479 N.W.2d 796 (1992).

[31] See *id.*

[32] *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996).

[33] See, *State v. Combs*, 297 Neb. 422, 900 N.W.2d 473 (2017); *State v. Severin, supra* note 32; *State v. Malone*, 26 Neb. App. 121, 917 N.W.2d 164 (2018).

reviewing a criminal conviction, does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[34] A conviction will be affirmed in the absence of prejudicial error if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.[35]

[18-20] Nebraska law provides, "No conviction for an offense punishable under any provision of the Uniform Controlled Substances Act shall be based solely upon the uncorroborated testimony of a cooperating individual."[36] When the law requires corroboration of a witness to support a conviction, a witness' testimony must be accompanied by evidence other than that from the witness.[37] Under the Uniform Controlled Substances Act, corroboration is sufficient to satisfy the requirement that a conviction not be based solely upon uncorroborated testimony of an individual cooperating with the prosecution if the witness' testimony is corroborated as to material facts and circumstances which tend to support the testimony as to the principal fact in issue.[38] Testimony of a cooperating individual need not be corroborated on every element of a crime.[39]

Savage claims that there was insufficient evidence to allow the case to go to a jury because there were no corroborating details regarding Savage's alleged drug dealing as required under § 28-1439.01 and because there was not sufficient evidence to prove that Savage possessed methamphetamine. The State provided evidence of his drug dealing in the form of both

---

[34] *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

[35] *Id*.

[36] § 28-1439.01.

[37] *State v. Goodro*, 251 Neb. 311, 556 N.W.2d 630 (1996).

[38] *Id.*

[39] *State v. Kramer*, 238 Neb. 252, 469 N.W.2d 785 (1991); *State v. Taylor*, 221 Neb. 114, 375 N.W.2d 610 (1985); *State v. Kuta*, 12 Neb. App. 847, 686 N.W.2d 374 (2004).

testimony and physical evidence. Though some of the testimony was elicited from two cooperating individuals, Dryden and Addleman, it cannot be said that Savage's conviction was based *solely* upon uncorroborated testimony of *a cooperating individual*. The State provided evidence of text messages that indicated that Savage was selling methamphetamine, as well as witness testimony from five other noncooperating individuals who generally corroborated the cooperating individuals' testimony. Savage's § 28-1439.01 argument has no merit.

[21,22] We likewise find no merit to Savage's argument that the evidence was insufficient to find that Savage possessed methamphetamine. During trial, the State relied on a theory of constructive possession to convict Savage. Evidence that a defendant had constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession and to sustain a conviction for unlawful possession.[40] Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the substance at the time of the arrest or by a showing of dominion over the substance.[41]

Both Addleman and Tannehill testified that Savage removed a bag of methamphetamine from his groin area and threw it to Tannehill to put into her vagina upon being pulled over by the police officers. The arresting police officers testified that Savage's zipper was unusually unzipped at the time of the traffic stop, which corroborates Addleman's and Tannehill's testimony. In further support of Addleman's and Tannehill's testimony, the evidence of the text messages between Savage's and Dryden's cell phones demonstrates that Savage knew that he had drugs on or at least near his person because he was attempting to sell them. This evidence was sufficient to prove the element of possession of methamphetamine.

---

[40] *State v. Garcia*, 216 Neb. 769, 345 N.W.2d 826 (1984).

[41] *Id.*

Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to support Savage's conviction.

### 3. Excessive Sentence

Finally, Savage assigns that the district court abused its discretion by imposing an excessive sentence. We disagree.

When a trial court's sentence is within the statutory guidelines, the sentence will only be disturbed by an appellate court when an abuse of discretion is shown.[42] Here, Savage's sentence was enhanced per Nebraska's habitual criminal statute, § 29-2221. Under Nebraska law, the mandatory minimum Savage could have been sentenced to was a term of 10 years' imprisonment and the maximum term was not more than 60 years' imprisonment.[43] Savage was sentenced to imprisonment for the mandatory minimum of 10 years, but no more than 18 years.

[23] Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[44] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime.[45] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[46]

---

[42] *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

[43] § 29-2221.

[44] *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016).

[45] *State v. Huff, supra* note 42.

[46] *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

In this case, the district court considered the nature and circumstances of the crime and the history, character, and condition of Savage. In its sentencing order, the court noted that Savage has "a demonstrated history of criminal activity, disregard for the law, and an unwillingness to comport his conduct to comply with the law." Savage's sentence is on the lower end of the spectrum that could have been imposed under § 29-2221. Based on the record before us, the sentencing court did not consider any inappropriate or unreasonable factors in determining the sentence. We find that the court did not abuse its discretion in its imposition of Savage's sentence.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's decision on this matter.

Affirmed.