Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/20/2019 09:07 AM CDT

State of Nebraska, appellee, v.
Shantrell A. Hickey, appellant.
___ N.W.2d ___

Filed August 13, 2019.    No. A-18-351.

1. **Constitutional Law: Witnesses: Appeal and Error.** An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and reviews the underlying factual determinations for clear error.

2. **Rules of Evidence: Appeal and Error.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

3. ____: ____. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

4. **Constitutional Law: Trial: Rules of Evidence: Hearsay.** Where "testimonial" statements are at issue, the Confrontation Clause demands that such out-of-court hearsay statements be admitted at trial only if the declarant is unavailable and there had been a prior opportunity for cross-examination.

5. **Criminal Law: Appeal and Error.** Harmless error jurisprudence recognizes that not all trial errors, even those of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result.

6. **Convictions: Appeal and Error.** It is only prejudicial error, that is, error which cannot be said to be harmless beyond a reasonable doubt, which requires a reversal.

7. **Evidence: Words and Phrases.** Cumulative evidence means evidence tending to prove the same point of which other evidence has been offered.

8. **Rules of Evidence: Testimony.** Under Neb. Rev. Stat. §§ 27-701 and 27-702 (Reissue 2016), opinion testimony, whether by a lay or expert witness, is permissible only if it is helpful to the trier of fact in making a determination of a fact in issue.

9. **Rules of Evidence: Proof.** Under what is commonly and incorrectly referred to as the "best evidence rule," in order to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required.

10. \_\_\_\_: \_\_\_\_. The "original writings rule" applies only if the party offering the evidence is seeking to prove the contents of a writing, recording, or photograph.

11. **Constitutional Law: Rules of the Supreme Court: Courts: Statutes.** Strict compliance with Neb. Ct. R. App. P. § 2-109(E) (rev. 2014) is necessary whenever a litigant challenges the constitutionality of a statute, regardless of how that constitutional challenge may be characterized.

12. **Criminal Law: Evidence: New Trial: Appeal and Error.** Upon finding reversible error in a criminal trial, an appellate court must determine whether the total evidence admitted by the district court, erroneously or not, was sufficient to sustain a guilty verdict.

13. **Evidence: New Trial: Double Jeopardy: Appeal and Error.** If evidence is not sufficient to sustain a verdict after an appellate court finds reversible error, then double jeopardy forbids a remand for a new trial.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Reversed and remanded for a new trial.

Joe Nigro, Lancaster County Public Defender, and Nathan J. Sohriakoff for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Riedmann, Arterburn, and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

Shantrell A. Hickey appeals his convictions in the district court for Lancaster County of discharge of a firearm near a vehicle or building and use of a firearm to commit a felony. We find that the district court erred in admitting into evidence at trial testimonial statements from a police interrogation.

Therefore, we reverse the convictions and remand the cause for a new trial.

## BACKGROUND

Hickey was charged with discharge of a firearm near a vehicle or building and use of a firearm to commit a felony as a result of a shooting that occurred in Lincoln, Nebraska, on February 21, 2017. Callers to the 911 emergency dispatch service that evening reported hearing gunshots, but the Lincoln police officers who responded to the area were unable to determine where the shooting had occurred. Two days later, bullet casings were found in the parking lot of a gas station in the area where the gunshots were heard. Lincoln police then discovered that the shooting had been captured on the surveillance camera at the gas station. The surveillance video depicts a white car pulling up near another vehicle parked at the gas station. The shooter emerges from the passenger side of the back seat of the white car and begins firing a gun at the other vehicle as it pulls away and leaves the parking lot.

After viewing the video, police officers were able to identify the white car and locate its registered owner. The owner was ultimately arrested, read his *Miranda* rights, and interviewed at the police station. During the interrogation by police, he admitted that he was driving the white car at the time of the shooting and implicated Hickey as the shooter. He also identified Hickey's brother as another occupant of the car at the time of the shooting.

The matter proceeded to a jury trial in October 2017. The jury was unable to reach a verdict, however, and the district court declared a mistrial.

A second jury trial was held in February 2018. The video of the shooting was received into evidence at trial and played for the jury. Lincoln police officer Maxwell Hubka, the primary investigator on the case, explained that upon viewing the video, he immediately identified Hickey as the shooter. He explained that he recognized Hickey because at the time

of the shooting, he had known Hickey for approximately 14 months, had met him "ten plus times," and had "talked to him face to face numerous times." He noted that he recognized Hickey's facial features at a certain point in the video where the shooter's face is more visible. Hubka testified that he was additionally able to recognize Hickey because of the way he moved; his clothing, height, weight, build, and facial appearance; his earring; his hairstyle; and the other people present in the video.

Similarly, Lincoln police officer Steven Berry testified that he had been familiar with Hickey for approximately 3 years before the shooting. He has observed Hickey in photographs and videos posted to social media pages and met Hickey in person on more than one occasion. Berry explained that therefore he was familiar with Hickey's voice, walk and movement, clothing, hairstyle, family, and associates. Upon viewing the video, Berry was able to identify Hickey "pretty quickly" given his familiarity with Hickey and the other people depicted in the video. Hickey objected to the testimony of Hubka and Berry identifying him as the shooter on the video, but the district court overruled the objections.

The State also called the driver of the white car to testify at trial, first outside the presence of the jury and then in front of the jury. The driver repeatedly refused to answer questions regarding the shooting, despite an order from the court that he do so; therefore, the district court held him in contempt of court and determined that he was unavailable as a witness pursuant to Neb. Rev. Stat. § 27-804(1)(b) (Reissue 2016). As a result of the driver's unavailability, the State offered into evidence portions of the statements he made during his police interrogation. Hickey objected on Confrontation Clause and hearsay grounds, but his objections were overruled.

The statements were received into evidence in the form of five clips of the video recording of the police interrogation, which were played for the jury at trial. In the clips, the driver admitted that he was driving his white car during the

shooting, that Hickey and his brother were in the car with him, and that Hickey was the shooter.

Hickey and his brother both testified at trial, and they each denied that Hickey was the shooter. Hickey's brother said that he was the shooter and that Hickey was not in the car or at the scene of the shooting. Hickey denied being at the scene.

At the conclusion of evidence and after deliberating, the jury found Hickey guilty of both counts. He was sentenced to consecutive terms of imprisonment of 10 to 25 years. Hickey appeals.

## ASSIGNMENTS OF ERROR

Hickey assigns, restated, that the district court erred in (1) admitting the driver's statements into evidence in violation of the Confrontation Clause, (2) admitting the driver's statements into evidence under an exception to the hearsay rule, (3) denying Hickey's proffered jury instructions, (4) applying unconstitutional special legislation and finding Hickey guilty under Neb. Rev. Stat. § 28-1212.04 (Reissue 2016), (5) allowing Hubka and Berry to identify Hickey as the shooter shown in the surveillance video, and (6) finding sufficient evidence to support the convictions.

## STANDARD OF REVIEW

[1] An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and reviews the underlying factual determinations for clear error. *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013).

[2,3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Russell*, 292 Neb. 501, 874 N.W.2d 8 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate

court reviews the admissibility of evidence for an abuse of discretion. *Id*.

## ANALYSIS

*Confrontation Clause.*

Hickey argues that the district court erred in admitting into evidence the driver's statements because they violate his right of confrontation. We agree.

[4] The Confrontation Clause, U.S. Const. amend. VI, provides, in relevant part: "'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .'" *State v. Fischer*, 272 Neb. 963, 968, 726 N.W.2d 176, 181 (2007). In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the U.S. Supreme Court held that where "testimonial" statements are at issue, the Confrontation Clause demands that such out-of-court hearsay statements be admitted at trial only if the declarant is unavailable and there had been a prior opportunity for cross-examination.

Although the U.S. Supreme Court declined to provide a comprehensive definition of "testimonial," it stated that testimonial statements include, at a minimum, prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and police interrogations. See *Crawford v. Washington, supra*. See, also, *State v. Fischer, supra*. Despite the lack of a precise definition, the Court concluded that a statement made by the petitioner's wife was testimonial because she made the statement while under police interrogation, and the questioning that generated her statement—which was made and recorded while she was in police custody, after having been given *Miranda* warnings as a possible suspect herself—qualified as testimonial under any conceivable definition of an interrogation. See *id*. Later, in *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the Court similarly concluded that statements made during a police interrogation are testimonial when the circumstances objectively indicate

that there is no ongoing emergency and the primary purpose of the interrogation is to prove past events potentially relevant to later criminal prosecution.

Similar circumstances are present in the instant case. The police interrogation of the driver took place days after the shooting occurred, and thus, there was no ongoing emergency. The driver was questioned as a possible suspect himself at the police station after agreeing to waive his *Miranda* rights. The purpose of the interview was to gain information as to who was involved in the shooting, information potentially relevant to later prosecution of those involved. The driver's statements are therefore testimonial and admissible at trial only if he was unavailable as a witness and there had been a prior opportunity for cross-examination.

It is undisputed that the driver was unavailable as a witness at trial under § 27-804(1)(b). However, Hickey had no prior opportunity to cross-examine the driver, because the driver's statements were made during a police interrogation, at which Hickey was not present, and the driver was not otherwise subjected to cross-examination at a pretrial deposition or hearing. Therefore, as Hickey argues and the State concedes, the district court erred in admitting the driver's statements into evidence at trial because doing so violated Hickey's rights under the Confrontation Clause. Based on this finding, we need not address whether the driver's statements were also inadmissible hearsay.

[5,6] Our inquiry does not end here, however, because Confrontation Clause violations are subject to harmless error analysis. See *State v. Hood*, 301 Neb. 207, 917 N.W.2d 880 (2018). See, also, *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Our harmless error jurisprudence recognizes that not all trial errors, even those of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result. *State v. Hood, supra*. It is only prejudicial error, that is, error which cannot be said to be harmless beyond a reasonable doubt, which requires a reversal.

*Id*. When determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, influenced the outcome of the case. *Id*.

[7] Generally, the erroneous admission of evidence is not reversible error if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding of the trier of fact. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014). Cumulative evidence means evidence tending to prove the same point of which other evidence has been offered. *Id*.

Even in circumstances where erroneously admitted evidence is cumulative of other properly admitted evidence, the Nebraska Supreme Court has recognized the differing weight a witness' testimony may have depending upon his or her relationship with the party against whom he or she is testifying. See *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013). In *Simon v. Drake*, a medical malpractice action, the defendant was allowed to elicit testimony from one of the plaintiff's treating physicians that the needle size used by the defendant was within the range of the proper needle size for the procedure at issue. The treating physician had not been designated as an expert. The trial court found this to be harmless error, and on appeal, this court agreed.

Upon further review, the Nebraska Supreme Court reversed. It reasoned that the treating physician's testimony was not substantially similar to the testimony of the parties' designated experts because "[c]ompared to the testimony of a hired expert, a juror was likely to give great weight to [the treating physician's] opinion because he was [the plaintiff's] treating physician and testifying as an expert against his own patient." *Id*. at 794, 829 N.W.2d at 693. The court went on to explain that the relationship between a patient and a treating physician was one of confidence and trust and that therefore, the jury would have given significant weight to that testimony. The court stated that it could not conclude that the weight the jury likely would have given to the treating physician's opinions

was not the "tipping point" for finding in favor of the defendant, especially since the defendant's only expert conceded he would have used a different needle size. *Id*. at 796, 829 N.W.2d at 694.

In the present case, the driver's statements were cumulative of the testimony by Hubka and Berry in the sense that these three witnesses all identified Hickey as the shooter. The difference is that Hubka and Berry identified Hickey by observing the surveillance video and rendering their opinions that the person depicted in the video was Hickey. In contrast, the driver was present at the scene when the shooting occurred and was driving the vehicle from which the shooter emerged. His testimony was based on his firsthand observation of the shooting, as opposed to making an identification on the video, and he was the only witness who claimed to have personally seen Hickey at the scene of the shooting. Additionally, given that the shooter emerged from the driver's vehicle, the driver had, at a minimum, a personal relationship with the shooter and was implicating someone with whom he was friendly, facts to which the jury would likely give significant weight.

The U.S. Supreme Court has similarly declined to find the erroneous admission of testimony, even when cumulative, was harmless when such testimony addressed the only factual issue in the case. In *Hawkins v. United States*, 358 U.S. 74, 79 S. Ct. 136, 3 L. Ed. 2d 125 (1958), the U.S. Supreme Court reversed the petitioner's conviction for transporting a woman between states for the purpose of prostitution, holding that the district court erred by allowing the government to use the petitioner's wife as a witness against him. The Supreme Court noted that the wife's testimony supported the government on "the only factual issue in the case," which was whether the petitioner's dominant purpose in making the trip was to facilitate the woman's practice of prostitution. *Id.*, 358 U.S. at 79. The government urged the Supreme Court to find that the error was harmless, but the Court declined to do so, stating that "we cannot be sure that [the wife's testimony,] though in part cumulative,

did not tip the scales against petitioner on the close and vital issue of whether his prime motivation in making the interstate trip" was to facilitate prostitution. *Id.*, 358 U.S. at 80.

Likewise in the instant case, we cannot say that the driver's statements were not the "tipping point" for the jury finding that Hickey was the shooter, particularly given that the only issue for the jury to decide was whether Hickey was the person depicted in the video committing the crime, and the shooter's identity is not entirely clear from the video. Although Hubka and Berry offered their opinions that Hickey was the shooter based on their observation of the video and familiarity with Hickey, the driver of the white car was the only witness present at the scene who placed Hickey at the scene as well. Accordingly, we conclude that the State failed to prove beyond a reasonable doubt that the admission of the driver's statements was harmless error, and we therefore reverse the convictions.

*Lay Witness Opinion.*

Although the foregoing determination resolves this appeal, we nonetheless consider other assignments of error presenting issues which are likely to reoccur in the new trial we must order, as further explained below. See *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013) (appellate court may, at its discretion, discuss issues unnecessary to disposition of appeal where those issues are likely to recur during further proceedings).

Hickey asserts that the district court erred in allowing Hubka and Berry to identify him on the surveillance video. He claims that such identification invaded the province of the jury and was an improper lay witness opinion. We find no error in the admission of this testimony.

[8] Under Neb. Rev. Stat. § 27-701 (Reissue 2016), if the witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is rationally based on the perception of the witness and helpful to a clear understanding

of his or her testimony or the determination of a fact in issue. "The '"ultimate issue"' rule was an evidentiary rule in many jurisdictions that prohibited witnesses from giving opinions or conclusions on an ultimate fact in issue because such testimony, it was believed, '"usurps the function" or "invades the province" of the jury.'" *State v. Rocha*, 295 Neb. 716, 732, 890 N.W.2d 178, 194 (2017). The ultimate issue rule was abolished in Nebraska by Neb. Rev. Stat. § 27-704 (Reissue 2016), which provides that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. *State v. Rocha, supra*. Under § 27-704, the basic approach to opinions, lay and expert, is to admit them when helpful to the trier of fact. *State v. Rocha, supra*. But the abolition of the ultimate issue rule does not lower the bar so as to admit all opinions, because under § 27-701 and Neb. Rev. Stat. § 27-702 (Reissue 2016), opinion testimony, whether by a lay or expert witness, is permissible only if it is helpful to the trier of fact in making a determination of a fact in issue. See *State v. Rocha, supra*.

Because Nebraska has abolished the ultimate issue rule, the opinion testimony of Hubka and Berry was not inadmissible because it invaded the province of the jury. However, we must decide whether such testimony was "otherwise admissible" under § 27-704, or in other words, whether the testimony was properly admitted as lay witness opinion testimony pursuant to § 27-701. Nebraska has essentially adopted Fed. R. Evid. 701 and 702. See *State v. Rocha, supra*. We therefore look to the federal courts, which apply federal rules 701 and 702.

The U.S. Court of Appeals for the Eighth Circuit has said that "'[u]nder Federal Rule of Evidence 701, "[a] witness's opinion concerning the identity of a person depicted in a surveillance photograph is admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury."'" *U.S. v. Sanchez*, 789 F.3d 827, 837 (8th Cir. 2015). Relevant

considerations include whether the witness was familiar with the defendant's appearance around the time that the surveillance photograph was taken and whether the surveillance photograph made it difficult for the jury to make a positive identification of the defendant. *Id*. In *Sanchez*, a special agent of the U.S. Drug Enforcement Administration set up a controlled buy of drugs from the defendant and video recorded the transaction. At trial, the agent involved identified the defendant on the video, and the defendant objected to the identification, which the trial court overruled. On appeal, the Eighth Circuit held that given the relatively low quality of the footage and the agent's extensive surveillance of the defendant during and around the time of the controlled buy, it was clear that the agent was more likely to correctly identify the defendant from the footage than was the jury. Therefore, it held that the trial court did not abuse its discretion in allowing the testimony to identify the persons depicted in the video footage.

Similarly, in *U.S. v. Anderson*, 783 F.3d 727 (8th Cir. 2015), agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives investigated an explosion and fire at a restaurant. The investigation focused on identifying individuals depicted in surveillance videos from the restaurant and determining their roles in the scheme. After receiving information that led to identifying one of the three defendants in the case, a bureau agent installed a pole camera outside of that defendant's residence, which was in place for approximately 2 years. In reviewing the footage from this camera, the agent became familiar with the appearance of that defendant, as well as his vehicle, and observed another defendant visit him on several occasions. At trial, the agent identified those two defendants in the surveillance video from the restaurant. On appeal, the defendants acknowledged that they did not object to the identification at trial. In reviewing for plain error, the Eighth Circuit found none, noting that the agent's observations of the defendants was much closer in time than the jury's observations more than 4 years after the fire, and the agent was very

familiar with the appearance of each defendant after reviewing surveillance footage of them from the pole camera. The court also noted that the fact that the surveillance footage in which the agent identified the defendants captured events that occurred at night further bolstered the helpfulness of his identification testimony.

The federal courts focus on the "helpfulness" requirement of federal rule 701, finding that it is satisfied as to lay opinions of video or photographic evidence only where the witness is better able to observe, understand, or interpret the contents of the video or photograph than the jury; this principle is well-settled under federal appellate jurisprudence. See, e.g., *U.S. v. Fulton*, 837 F.3d 281 (3d Cir. 2016); *U.S. v. Houston*, 813 F.3d 282 (6th Cir. 2016); *U.S. v. Mendiola*, 707 F.3d 735 (7th Cir. 2013); *U.S. v. Rodríguez-Adorno*, 695 F.3d 32 (1st Cir. 2012); *U.S. v. Contreras*, 536 F.3d 1167 (10th Cir. 2008); *U.S. v. Pierce*, 136 F.3d 770 (11th Cir. 1998); *Young v. U.S.*, 111 A.3d 13 (D.C. 2015).

In most jurisdictions, a showing of sustained contact and/or special knowledge of the defendant is not a prerequisite to a lay witness' giving identification testimony, but, rather, the witness need only have sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful. See, e.g., *U.S. v. Holmes*, 229 F.3d 782 (9th Cir. 2000). This is because, as the 10th Circuit recognized in *U.S. v. Contreras, supra*, a witness' familiarity with the defendant offers the jury a more sophisticated identification than it could make on its own, and in that case, because the witness had repeated interactions with the defendant, she could identify him based on many factors that would not be apparent to a jury viewing the defendant only in a courtroom setting. The 10th Circuit specifically observed that

"testimony by those who knew defendants over a period of time and in a variety of circumstances offers to the jury a perspective it could not acquire in its limited exposure to defendants. Human features develop in the mind's eye

over time. These witnesses had interacted with defend-
ants in a way the jury could not, and in natural settings
that gave them a greater appreciation of defendants' nor-
mal appearance. Thus, their testimony provided the jury
with the opinion of those whose exposure was not limited
to three days in a sterile courtroom setting."

*Id.* at 1170-71.

In the present case, the district court did not abuse its
discretion in concluding that the officers' identifications of
Hickey on the video were helpful to the jury based on the
officers' history with Hickey and familiarity with him, as
well as the quality of the video. Although the jury viewed
the video of the shooting, the shooter's face is not readily
identifiable, and thus, lay witness opinion testimony would
be helpful to the jury to identify the shooter. Hubka explained
that prior to the day of the shooting, he had known Hickey
for approximately 14 months, met him "ten plus times," and
had "talked to him face to face numerous times." He had
also observed Hickey on social media. He explained that
he has had extended in-person conversations with Hickey
and was familiar with his voice, body, height, weight, walk,
hairstyle, family, and acquaintances. Hubka was able to iden-
tify Hickey's facial features at a certain point in the video
and also recognized him by the way he moved; his clothing,
height, weight, and build; his earring; the way his hair was
styled; and the other people in the video. He testified that
"within seconds" of viewing the video, he identified Hickey
as the shooter.

Likewise, Berry testified that he had been familiar with
Hickey for approximately 3 years before the shooting. He has
observed Hickey on social media, including in photographs
and videos. He explained that he has met Hickey in person on
more than one occasion and was familiar with his voice, walk
and movement, clothing, hairstyle, family, and associates.
Upon viewing the video, Berry was able to identify Hickey
"pretty quickly" because of his familiarity with him and the

other people depicted in the video. Given the officers' history and familiarity with Hickey, their ability to readily identify him on the video, and the fact that the video was recorded at night and is not entirely clear, we find that allowing Hubka and Berry to identify Hickey as the shooter in the video was not an abuse of discretion.

[9,10] To the extent Hickey argues that the opinion testimony also violated the best evidence rule, we do not agree. "Under what is commonly and incorrectly referred to as the 'best evidence rule,' in order to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required." *State v. Savage*, 301 Neb. 873, 888, 920 N.W.2d 692, 705 (2018). This "'"original writings" rule'" applies only if the party offering the evidence is seeking to prove the contents of a writing, recording, or photograph. *Id*. Under Neb. Rev. Stat. § 27-1001(3) (Reissue 2016), defining an original under the rule, if data is stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an original. *State v. Savage, supra*.

Identifying physical characteristics do not constitute the content of a communication, and thus, the officers' identification of individuals depicted in the video had no role in proving the content of the recording. See *U.S. v. Mendiola*, 707 F.3d 735 (7th Cir. 2013). Accordingly, allowing the officers' opinion testimony did not violate the best evidence rule.

*Unconstitutional Special
Legislation.*

[11] Hickey contends that § 28-1212.04, the statute criminalizing the discharge of a firearm near a vehicle or building, is unconstitutional special legislation. However, Hickey did not file notice of a constitutional question as required by Neb. Ct. R. App. P. § 2-109(E) (rev. 2014). Section 2-109(E) requires that a party presenting a case involving the federal or state constitutionality of a statute must file and serve notice

thereof with the Supreme Court Clerk by a separate written notice or by notice in a petition to bypass at the time of filing such party's brief. See *State v. Epp*, 299 Neb. 703, 910 N.W.2d 91 (2018). Strict compliance with § 2-109(E) is necessary whenever a litigant challenges the constitutionality of a statute, regardless of how that constitutional challenge may be characterized. *Id*. Because Hickey did not comply with § 2-109(E), we decline to address this argument.

*Double Jeopardy.*

[12,13] Having found reversible error in the admission of the driver's statements, we must determine whether the totality of the evidence admitted by the district court was sufficient to sustain Hickey's convictions. Upon finding reversible error in a criminal trial, an appellate court must determine whether the total evidence admitted by the district court, erroneously or not, was sufficient to sustain a guilty verdict. *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015). If it was not, then double jeopardy forbids a remand for a new trial. *Id*. After reviewing the record, we find that the evidence presented at trial, including the erroneously admitted evidence, was sufficient to support Hickey's convictions. Accordingly, we conclude that double jeopardy does not preclude a new trial.

*Remaining Assignments of Error.*

Because we have reversed Hickey's convictions, we need not reach his assigned errors regarding the denial of several proposed jury instructions. These issues are either not likely to recur on remand or must be evaluated in the context of a particular trial, and therefore, review of the court's rulings in this trial would not necessarily determine how the court should rule in a new trial. See *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012). We therefore do not consider Hickey's remaining assignments of error.

## CONCLUSION

We conclude that the district court's admission of the driver's statements into evidence at trial was prejudicial error. As a result, we reverse the convictions and remand the cause to the district court for a new trial.

Reversed and remanded for a new trial.